## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SCOTT GILBERT,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-22
Black, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Scott Gilbert, proceeding pro se, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 17) and the Commissioner's response in opposition (Doc. 21).

### I. Procedural Background

Plaintiff filed an application for DIB and SSI in April 25, 2014, alleging disability since March 7, 2014 due to malignant melanoma of the skin. The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was afforded a hearing before administrative law judge ("ALJ") Peter J. Boylan on January 9, 2017. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On March 1, 2017, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since March 7, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairment: status post malignant melanoma of the skin. (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is further limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours in an 8-hour workday; standing and/or walking for 6 hours in an 8-hour workday; and frequently climbing ladders, ropes, or scaffolds.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[4]
>
> 7. The [plaintiff] was born [in] . . . 1965 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

---

[4] Plaintiff has past relevant work as a cashier, counter clerk, and security supervisor. (Tr. 25).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[5]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from March 7, 2014, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 20-26).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[5] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of light, unskilled occupations such as routing clerk (1,800 jobs regionally and 80,000 jobs nationally), marking clerk (5,000 jobs regionally and 290,000 jobs nationally), and inspector (1,400 jobs regionally and 100,000 jobs nationally). (Tr. 26, 721).

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Construing plaintiff's pro se statement of errors liberally, plaintiff argues that the ALJ's decision fails to properly account for his mental and physical impairments. (*See* Doc. 17).

### E. The Parties' Arguments

Plaintiff argues that the ALJ's decision fails to consider certain pieces of mental and physical health evidence. (Doc. 17 at 1). Plaintiff alleges that he had surgeries in September 2013 to remove an infected lymph node and a deep cancerous spot on his lower back. (*Id.*). Plaintiff began year-long chemotherapy treatment ("Interferon") in November 2013, which caused him to miss work for the entire month. (*Id.*). Beginning in March 2014, plaintiff alleges that the physical toll of chemotherapy prevented him from returning to work. (*Id.*). On April 29, 2014, plaintiff was admitted to the Good Samaritan Hospital's intensive care unit. (*Id.*). Plaintiff states that he suffered residual side effects for fourteen months after the chemotherapy

5

and Dr. Maher prescribed anti-depressant and anti-anxiety medications. (*Id.* at 2). Plaintiff alleges that he also suffers from other side effects such as fatigue, confusion, and lack of concentration. (*Id.*). Plaintiff alleges that the ALJ's decision fails to account for his prescribed medications for diabetes and hypertension, as well as chemotherapy treatments. (*Id.*).

In response, the Commissioner argues that the ALJ properly determined that plaintiff had the RFC to perform light work despite his impairments. (Doc. 21 at 3). The Commissioner contends that the ALJ reasonably considered plaintiff's treatment history and the objective medical evidence in assessing the RFC, including plaintiff's September 2013 melanoma and lymph node surgery and subsequent physical examinations. (*Id.* at 3-4). The Commissioner argues that the medical opinion evidence from the state agency reviewing and examining physicians supports the ALJ's decision that plaintiff was not disabled. (*Id.* at 4). The Commissioner also contends that plaintiff's ability to perform a range of daily activities, such as shopping, doing chores, handling personal care, driving, reading, and watching television, undermine his allegations of disabling impairments. (*Id.* at 5).

**F. Resolution**

**1. The ALJ properly considered the mental health evidence, including plaintiff's anti-depressant and anti-anxiety medications and plaintiff's post-chemotherapy complaints of confusion and lack of concentration.**

The ALJ's consideration of the mental health evidence of record and determination that plaintiff did not suffer from a severe mental health impairment are supported by substantial evidence. At step two in the sequential analysis, the ALJ determined that plaintiff's "medically determinable affective and anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the [plaintiff]'s ability to perform basic mental work activities and are therefore non-severe." (Tr. 21). In determining that plaintiff's mental impairments were

non-severe, the ALJ thoroughly considered the mental health evidence of record, including clinical examinations and medical opinions from state agency psychologists.

The ALJ noted that plaintiff was prescribed Clonazepam for anxiety. (Tr. 21). However, several clinical examinations revealed that plaintiff had a normal mood, affect, behavior, and thought content. (Tr. 370—May 2014 examination with Dr. James Maher, M.D., at the TriHealth Cancer Institute; Tr. 454—September 2014 examination with Dr. Maher; Tr. 531— October 2014 examination with Dr. Joseph Huschart, M.D., primary care physician at TriHealth; Tr. 606—February 2015 examination with Dr. Maher; Tr. 528—March 2015 examination Dr. Huschart; Tr. 602—June 2015 examination with Dr. Maher; Tr. 525—January 2016 examination with Dr. Huschart). By June 2016, plaintiff reported that his anxiety was controlled when taking Clonazepam and that he was weaning off the anti-anxiety medications. (Tr. 644). Plaintiff had no depressive symptoms or suicidal ideation. (*Id.*). Plaintiff had a normal mood and affect, normal behavior, and normal thought content. (Tr. 647).

The ALJ also considered the mental health opinions of record. In January 2015, Dr. David Chiappone, Ph.D., conducted a psychological evaluation at the request of the state agency. (Tr. 514-21). Plaintiff reported that he had anxiety and depression in the aftermath of chemotherapy. (Tr. 516). On examination, plaintiff did not appear to be markedly depressed and had adequate energy and expressed his thoughts at an adequate pace. (Tr. 517). Plaintiff reported his depression to be a "4" on a scale of "10" and he denied feeling helpless, hopeless, or worthless. (*Id.*). Plaintiff denied thoughts and attempts of suicide. (*Id.*). Plaintiff did not appear to be markedly anxious and did not present with motoric or autonomic signs of anxiety. (*Id.*). He rated his anxiety as a "5" on a scale of "10." (*Id.*). Dr. Chiappone opined that plaintiff "endorsed symptoms suggesting he has an Adjustment Disorder with anxiety and depression in

the aftermath of having surgery for melanoma removed off his back" and "the aftermath of chemotherapy." (Tr. 519). Dr. Chiappone indicated that plaintiff "may have some difficulty maintaining attention and concentration over time," but his concentration and attention were adequate during the mental status examination. (Tr. 520). Dr. Chiappone suggested that plaintiff would be able to deal with stress on the jobsite and be able to relate to co-workers and supervisors. (*Id.*). Dr. Chiappone diagnosed plaintiff with adjustment disorder with anxiety and depression. (Tr. 521). In February 2015, Dr. Kristen Haskins, Psy.D., reviewed the file at the reconsideration level and determined that plaintiff did not have a severe mental impairment. (Tr. 123-24). Dr. Haskins noted:

> [Plaintiff] began to experience some difficulties since starting his chemotherapy and has been [diagnosed] with an adjustment disorder. [D]espite this he is able to understand, remember and follow instructions and can concentrate and attend satisfactorily. Although he experiences some reduced patience at times he is able to interact well with others and tolerate work stress. Overall he does not appear to be more than mildly limited.

(Tr. 124).

The ALJ afforded "some weight" to Dr. Chiappone's assessment. (Tr. 21). The ALJ assigned "significant weight" to the state agency findings, including Dr. Haskins' finding that plaintiff only had mild functional restrictions. (*Id.*). The ALJ explained: "[c]onsidering the treatment record, while there was psychotropic therapy, all of the treating clinical observations showed normal mood, affect, behavior and thought content, and the [plaintiff] repeatedly denied depression and stated that his anxiety was controlled with Clonazepam." (*Id.*). The ALJ noted that Dr. Chiappone's conclusions were "significantly influenced by subjective complaints and were not consistent with his own clinical observations." (*Id.*). The ALJ explained that Dr. Chiappone's observation that plaintiff had adequate concentration and attention during the

examination was inconsistent with his vague conclusion that plaintiff "may" have functional issues in these areas. (*Id.*).

The ALJ's non-severity finding is supported by substantial evidence. The regulations define a severe impairment or combination of impairments as one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Plaintiff is not required to establish total disability at this level of the sequential evaluation process. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). A plaintiff bears the burden of demonstrating that he suffers from a medically determinable impairment. *Wilson*, 378 F.3d at 548.

In making the non-severity finding, the ALJ properly afforded the assessment of Dr. Chiappone limited weight. "Any record opinion . . . may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.1527, 416.927; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d at 504, 514 (6th Cir. 2010)). The ALJ's decision to credit the opinions of the state agency reviewing physicians over Dr. Chiappone's opinion is substantially supported by the longitudinal record of clinical observations

showing normal mood, affect, behavior and thought content and plaintiff's own statements denying depression and reporting his anxiety to be controlled with Clonazepam, as described above. Generally, "evidence that medical issues can be improved when using prescribed drugs supports [a] denial of disability benefits." *Adkins v. Comm'r of Soc. Sec.*, No. 1:16-cv-465, 2018 WL 3543044, at *8 (E.D. Tenn. July 23, 2018) (quoting *Smith v. Comm'r of Soc. Sec.*, 564 F. App'x 758, 762-63 (6th Cir. 2014) (in turn citing *Hardaway v. Sec'y*, 823 F.2d 922, 927 (6th Cir. 1987)). In addition, as the ALJ noted, Dr. Chiappone's assessment was inconsistent with his own mental status examination, which revealed that plaintiff did not appear to be markedly depressed or anxious, and his concentration and attention were adequate. (Tr. 517-520).

The ALJ also conducted a thorough review of the mental health evidence of record in making his non-severity finding. Contrary to plaintiff's assertion, as described above, the ALJ considered that plaintiff was prescribed anti-anxiety medications by Dr. Maher after his chemotherapy. (Tr. 21). Nevertheless, clinical examinations revealed normal findings and plaintiff reported that his anxiety was controlled with medication. The ALJ also considered plaintiff's allegations of "confusion and lack of concentration." (Doc. 17 at 2). In weighing Dr. Chiappone's assessment, the ALJ noted that plaintiff's mental status examination revealed adequate concentration and attention. (Tr. 21). In assessing the RFC, the ALJ again considered that plaintiff's side effects from the chemotherapy included complaints of problems with concentration. However, the ALJ noted that these complaints were not consistent with the record and that repeat mental status examinations showed adequate concentration. (Tr. 24).

Accordingly, the ALJ properly concluded that plaintiff's depression and anxiety, as well as his complaints of confusion and lack of concentration, resulted in only a "slight abnormality which has such a minimal effect on [plaintiff] that it would not be expected to interfere with [his]

ability to work. . . ." *Farris*, 773 F.2d at 90. Plaintiff has not cited to any mental health evidence

that the ALJ failed to consider and has not shown how his anxiety, depression, confusion, and

lack of concentration contribute to any functional limitations.

### 2. The ALJ properly accounted for plaintiff's physical impairments, including his melanoma surgery and the residual side effects from chemotherapy treatments, and his hypertension and diabetes.

At step two in the sequential evaluation process, the ALJ determined that plaintiff's status

post malignant melanoma of the skin constituted a severe impairment. (Tr. 20). The ALJ

determined that plaintiff's hypertension and diabetes were "not demonstrated by the objective

record to be severe." (*Id.*). The ALJ noted that "[w]hile there has been regular mention of these

medically determinable impairments, the evidence does not suggest that they are functionally

limiting." (Tr. 20-21). After considering plaintiff's severe and non-severe impairments, at step

three in the sequential evaluation process, the ALJ determined that plaintiff had the RFC to

perform light work subject to the following limitations: lifting and/or carrying 20 pounds

occasionally and 10 pounds frequently; sitting for 6 hours in an 8-hour workday; standing and/or

walking for 6 hours in an 8-hour workday; and frequently climbing ladders, ropes, or scaffolds.

(Tr. 23).

The ALJ's non-severity finding for plaintiff's hypertension and diabetes is supported by

substantial evidence. As stated above, an impairment will be considered non-severe only if it is a

"slight abnormality which has such a minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education, and

work experience." *Farris*, 773 F.2d at 90 (citing *Brady*, 724 F.2d at 920). Although plaintiff

alleges that he is treated for diabetes and hypertension, he has failed to cite to evidence

demonstrating that these conditions cause functional limitations. To the contrary, the evidence

which the ALJ cited (Tr. 20) (citing Exhibit 6F/24, 65, Exhibit 8F), including the evidence from plaintiff's primary care physician Dr. Huschart who treated plaintiff's diabetes, demonstrates that plaintiff's hypertension and diabetes conditions had only a minimal effect on plaintiff's ability to function. (Tr. 443—"blood sugar controlled now," Tr. 484—hyperglycemia "good control for now," Tr. 523—diabetes symptoms stable in January 2016, Tr. 526—diabetes symptoms stable in July 2015 and no hypoglycemic complications, Tr. 529—in March 2015, plaintiff's disease course was stable with no hypoglycemic associated symptoms and controlled hypertension, Tr. 532—in October 2014, plaintiff's diabetes symptoms were stable and controlled). Plaintiff has not cited to any additional evidence demonstrating that his diabetes and hypertension resulted in greater functional limitations than the ALJ assessed.

The ALJ's RFC determination and consideration of plaintiff's condition after melanoma surgery and the side effects of Interferon therapy are also supported by substantial evidence. The Social Security regulations vest the ALJ with the responsibility of assessing an individual's RFC. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546, 416.946(c), 416.927(d)(2) (the final responsibility for deciding an individual's RFC is reserved to the Commissioner). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.920b. *See also Moore v. Astrue*, No. CIV.A. 07-204, 2008 WL 2051019, at *5-6 (E.D. Ky. May 12, 2008) (the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the record) (citing *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)).

In this case, the ALJ conducted a thorough review of the evidence post-dating the September 2013 excision of melanoma on plaintiff's back. (Tr. 24). The ALJ noted that plaintiff underwent Interferon therapy to reduce the risk of cancer recurrence. (*Id.*). As a result

of the Interferon injections, plaintiff reported side effects including fatigue and weight loss. (*Id.*). Nevertheless, clinical findings revealed no evidence of reoccurrence of the melanoma or abnormalities. (*Id.*). In December 2014, one year after the Interferon therapy, plaintiff reported that he was "doing well." (*Id.*) (citing Tr. 480). By June 2016, after plaintiff finished Interferon therapy, he reported that he was "doing well." (*Id.*) (citing Tr. 644). Plaintiff also reported malaise and fatigue, but denied back pain, falls, joint pain, myalgias, neck pain, dizziness, weakness, and headaches. (*Id.*) (citing Tr. 651). On clinical examination, plaintiff had a normal range of motion and the surgical scars on his back were well-healed. (*Id.*). The ALJ considered this evidence and plaintiff's symptoms related to the side effects from Interferon. (Tr. 24). The ALJ accommodated plaintiff's complaints of fatigue in the RFC and noted: "[w]hile there is support for a restriction to light work with frequent climbing restrictions due to fatigue, considering the repeat clinical findings of normal physical functioning, there is no support for the allegations of work preclusive functional restrictions." (*Id.*). Plaintiff also argues that the RFC determination is not supported because he was never evaluated by a state agency examining physician. (Doc. 17 at 3). However, "the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a full determination." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Plaintiffs seeking disability benefits bear the burden of providing medical evidence demonstrating their impairments and how the impairments affect their functional abilities. 20 C.F.R. § 404.1512(c). Plaintiff has not shown how the ALJ erred in failing to order a consultative examination.

Overall, plaintiff has not cited to any evidence that the ALJ failed to consider or any additional evidence supporting functional limitations from the side effects of Interferon therapy

or his melanoma surgery. Plaintiff asserts that he "can almost do no constructive physical labor to this day or keep [his] concentration for any length of time to keep and maintain persistent employment." (Doc. 17 at 3). The undersigned finds that the ALJ thoroughly considered the physical and mental health evidence. Even where substantial evidence would support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999). Accordingly, the ALJ's RFC determination is supported by substantial evidence. Plaintiff's assignment of error should be overruled.

Based on the foregoing, **IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case is closed on the docket of the Court.

Date: 1/7/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SCOTT GILBERT,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:18-cv-22
Black, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).